UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DANIEL FARFAN PARRA,

                                        Petitioner,

    vs.                                                                          9:26-CV-1162
                                                                                 (MAD)

MICHAEL BALL, DAVID VENTURELLA,
MARKWAYNE MULLIN, and
TODD BLANCHE,

                                        Respondents.

_____

APPEARANCES:                                    OF COUNSEL:

BOROWSKI WITMER                                 MATTHEW BOROWSKI, ESQ.
IMMIGRATION LAWYERS
4343 Union Rd
Buffalo, New York 14225
Attorney for Petitioner

OFFICE OF THE UNITED                            ALEXIS M. OSBORN, AUSA
STATES ATTORNEY
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Attorney for Respondents

Mae A. D'Agostino, U.S. District Judge:

MEMORANDUM-DECISION AND ORDER

I. INTRODUCTION

On June 2, 2026, Petitioner Daniel Farfan Parra filed a petition for writ of habeas corpus

(the "Petition"), seeking relief from his detention by the Department of Homeland Security's

("DHS") Immigration and Customs Enforcement Office ("ICE"). *See* Dkt. No. 1.  Petitioner

names the following individuals as Respondents: Acting Deputy Field Office Director of the ICE

1

Buffalo Field Office Michael Ball, Acting Director of ICE David Venturella, Secretary of Homeland Security Markwayne Mullin, and Acting U.S. Attorney General Todd Blanche (collectively, "Respondents").  *See id.*[1]

Petitioner was detained by ICE on the same day that he filed his petition: June 2, 2026.  *See id.*  He requests immediate release, an order prohibiting Petitioner's re-detention without a pre-deprivation hearing and notice, and an award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412.  *See id.* at 13-14.  Respondents oppose the Petition.  *See* Dkt. No. 6.  Petitioner filed a reply.  *See* Dkt. No. 7.

For the following reasons, the Petition is granted.[2]

## II. BACKGROUND

Petitioner, a nineteen-year-old citizen of Columbia, "entered the United States on or about August 25, 2015, on a tourist visa" and has resided in the United States since.  Dkt. No. 1 at ¶ 1, 4.  Petitioner's parents are both lawful permanent residents.  *See id.* at ¶ 7.  He is the beneficiary of an approved I-130 petition filed by his mother, Gloria Nelcy Parra Urrea, and "has a pending Form I-485, Application to Register Permanent Residence or Adjust Status."  *Id.* at ¶¶ 8-9.[3]

On June 2, 2026, Petitioner appeared at the USCIS Albany Field Office, located at 500 New Karner Road, Floor 3, Albany, New York, for a scheduled interview regarding his I-130

---

[1]  The Petition misidentifies the titles of Respondents Todd Blanche and Markwayne Mullin.  The Court has listed them correctly herein.

[2]  The Court has determined that a show cause hearing is not necessary and will decide this matter on submission.  *See Palma v. Arteta*, 823 F. Supp. 3d 311, 317 (S.D.N.Y. 2026) ("[W]here, as here, 'the record and submissions are adequate to resolve Petitioner's claim,' 'there is no need for a full evidentiary hearing'") (quoting *Kaplan v. United States*, No. 14-CV-1440, 2015 WL 4111246, *3 (S.D.N.Y. June 25, 2015), and then citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)).

[3]  The I-130 petition and Form I-485 process is described in more detail below.

petition and/or I-485 application. *See id.* at ¶¶ 10-11. "During the interview, the USCIS officer informed [Petitioner] and his mother that the I-130 petition had been approved." *Id.* at ¶ 16. However, at the conclusion of the interview, ICE agents arrested and detained Petitioner in the interview room. *See id.* at ¶¶ 17-19.

Petitioner is currently in removal proceedings, most recently having appeared before the Immigration Court on May 7, 2026. *See id.* at ¶¶ 41-43. At the May 7, 2026 hearing, he was "scheduled for a second Master Calendar Hearing on July 23, 2026, for the filing of applications for relief." *Id.* at ¶ 43. Petitioner alleges that he has no criminal history and is eligible for "Cancellation of Removal for Certain Non-Permanent Residents" because, *inter alia*, he "had accrued more than ten years of physical presence in the United States" and has two qualifying relatives (i.e., his parents). *Id.* at ¶¶ 50-54. He also states that he is not a danger or flight risk due to his "lack of any criminal history, long residence in the United States, education in this country, ongoing college enrollment, family ties to lawful permanent residents, approved I-130 petition, pending Form I-485, and pending Immigration Court proceedings." *Id.* at ¶ 54.

Petitioner contends that his arrest was unlawful because the ICE agents did not present him with a warrant (or any other document identifying the statutory basis for custody), no neutral decision maker made a pre-deprivation determination that he was a risk of flight, and he was not provided a meaningful opportunity to contest detention or demonstrate his entitlement to release on bond. *See id.* at ¶¶ 25-35.

Respondents contend that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). *See* Dkt. No. 6 at 5-6. Further, Respondents represent that Petitioner was taken into custody pursuant to an I-200 warrant, "issued a custody determination and advised . . . of his right to seek review before an Immigration Judge." *Id.* Petitioner appeared for a bond hearing on June 11, 2026, however, he

3

voluntarily withdrew his bond request without prejudice. *See id.* Accordingly, Respondents contend that Petitioner was not entitled to a pre-detention hearing under § 1226(a) and his request for an order requiring an individualized custody determination is moot because he was already afforded the process he seeks. *See id.* at 7-9.

In his reply papers, Petitioner argues that he is entitled to immediate release because his arrest was unlawful, as he was "lured to USCIS, thinking he would be awarded an immigration benefit but rather [was] handcuffed and detained." *See* Dkt. No. 7 at 2 (internal quotation marks omitted). He also believes the warrant provided by Respondents was "issued post hoc" and contends that his arrest was illegal because it "did not fall into any of the exceptions for a warrantless ICE arrest." *Id.*

### III. DISCUSSION

**A.    Legal Standard**

A district court may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Veletanga v. Noem*, No. 25-CV-9211, 2025 WL 3751865, *2 (S.D.N.Y. Dec. 26, 2025) (quoting *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4)); *see* 28 U.S.C. § 2241(c)(3). "This jurisdiction includes habeas petitions filed by immigration detainees[,]" *Padilla Molina v. DeLeon*, No. 25-CV-06526, 2025 WL 3718728, *2 (E.D.N.Y. Dec. 23, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)), including non-citizens, *see R.P.L. v. Maldonado*, 814 F. Supp. 3d 301, 304 (E.D.N.Y. 2025).

"'[T]he petitioner "bears the burden of proving that he is being held contrary to law[,] and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."'" *Veletanga*, 2025 WL 3751865, at *2 (quoting *Dzhabrailov v.*

4

*Decker*, No. 20-CV-3118, 2020 WL 2731966, *3 (S.D.N.Y. May 26, 2020)); *see Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

**B.    Petitioner's Arrest Was Unlawful**

Petitioner presents several arguments, but the Court finds one in particular to be persuasive and dispositive: arresting Petitioner at his adjustment of status interview violated the Immigration and Nationality Act ("INA"). *See* Dkt. No. 7 at 2.

Numerous district courts, including the Southern District of New York, "have found that the government violates the INA when it detains a noncitizen at adjustment of status interviews because the detention interferes with the noncitizen's ability to apply for relief to which they are statutorily entitled." *Singh v. Chestnut*, No. 1:26-CV-01055, 2026 WL 1758396, *2 (E.D. Cal. June 18, 2026), *R. & R. adopted*, 2026 WL 1805484 (E.D. Cal. June 23, 2026) (citing *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018) and *Franco v. Meyer*, No. 1:25-CV-01620, 2025 WL 3280782 (E.D. Cal. Nov. 25, 2025)).

The INA provides a process by which a non-citizen may adjust his or her status to lawful permanent resident. *See Nielsen*, 321 F. Supp. 3d at 464 ("Under the INA, at 8 U.S.C. § 1255, Congress provides pathways to legal residency for certain classes of aliens. These pathways permit aliens not lawfully in the United States to 'adjust' their status to legal permanent resident if they meet certain requirements"). "A noncitizen who is present in the United States lawfully may apply for [lawful permanent resident] status (colloquially referred to as a 'green card'), if otherwise eligible, by filing a [F]orm I-485 Application to Register Permanent Residence or Adjust Status." *Singh*, 2026 WL 1758396, at *2 (citing 8 C.F.R. § 245.2(a)(3)(ii)). However, before applying for an adjustment of status, a non-citizen must either "first obtain an immigrant visa or . . . show that one is immediately available to them—commonly through an approved I-

5

130 Petition for Alien Relative." *Id.* (citing 8 C.F.R. § 245.2(a)(2)(i)).  Either a USCIS officer or an Immigration Judge may adjudicate an I-485 adjustment of status application, but "only USCIS officers may adjudicate the prerequisite I-130 petitions." *Id.* (citing U.S. Dep't of Justice, Executive Office for Immigration Review Practice Manual § 1.4, https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-1-4).  Thus, an Immigration Judge can only adjudicate an adjustment of status application "for someone in [removal] proceedings . . . if USCIS *first* approves the I-130 immigrant visa petition." *Id.* (citing 8 C.F.R. § 1245.2(a)) (other citation omitted) (emphasis in original).

Respondents do not argue that Petitioner is ineligible for adjustment of status.  By all accounts, it appears that Petitioner was attempting to abide by the adjustment of status process when ICE arrested him.  His mother, a lawful permanent resident, filed an I-130 on his behalf (the first step in the process) and Petitioner has also filed a Form I-485 (the next step).  *See* Dkt. No. 1 at ¶¶ 8-9.  On June 2, 2026, Petitioner appeared at the USCIS office at the Government's request in connection with these applications.  *See id.* at ¶ 10.  And Respondents' submissions indicate that Petitioner's I-130 petition was in fact approved on June 2, 2026.  *See* Dkt. No. 6-2 at 8 (notice from USCIS that Petitioner's I-130 petition was approved).

With or without an administrative warrant,[4] it appears that ICE exploited Petitioner's utilization of the adjustment of status process to effectuate an unlawful arrest.  In *Nielsen*, the Southern District of New York provided the following salient analysis:

> By inviting Petitioner to interview for his green card and arresting him at his interview appointment, Respondents deployed § 1255 to effectuate the opposite of its intended outcome for aliens like Petitioner.  Respondents used the adjustment of status scheme as a

---

[4]  The Court does not take Petitioner's allegation that ICE agents issued the I-200 warrant post hoc lightly; however, he has offered no substantiation for this serious accusation.  Regardless, the Court need not reach the issue because it finds Petitioner's arrest was unlawful on other grounds.

> sword when it was intended to be used as a shield.  As such, Respondents' arrest and detention of Petitioner "upset[ ] the balance Congress created."  [*Succar v. Ashcroft*, 394 F.3d 8, 10 (1st Cir. 2005)].
>
> The Court rejects arrest and detention practices predicated on manipulating the laws that Congress has passed.  Congress did not intend its carefully considered adjustment of status process for a select group of aliens to become a mechanism for "gotcha" law enforcement.  Nor could it, without raising serious constitutional concerns.  These type of bait-and-switch tactics are not only a perversion of the statute, but also likely offensive to "the concept of ordered liberty." *Rochin v. California*, 342 U.S. 165 (1952) (internal quotation marks omitted).
>
> Because courts "must assume that when drafting the INA, Congress did not intend an absurd or manifestly unjust result," *Lockhart v. Napolitano*, 573 F.3d 251, 260 (6th Cir. 2009), the Court concludes that Congress could not have intended its silence on the interplay between adjustment and removal to permit ICE to exploit the former in service of the latter.  Accordingly, Petitioner has demonstrated that his arrest at USCIS's offices and his detention pursuant to that arrest likely violated the INA.

*Nielsen*, 321 F. Supp. 3d at 466 (footnote omitted).

*Nielsen* is somewhat factually distinct from the present matter, as there the petitioner sought a stay of removal pending adjudication of his habeas petition.  *See id.* at 456.  However, district courts across the country have relied on *Nielsen* in two relevant scenarios.  First, in cases where a petitioner has moved for a temporary restraining order *before* attending a scheduled USCIS adjustment of status interview, some courts have enjoined the Government from arresting and detaining the petitioner in connection with that interview.  *See, e.g.*, *Noto v. Noem*, 820 F. Supp. 3d 1344, 1362 (M.D. Fla. 2026); *Feitoza v. Noem*, No. 4:26-CV-40011, 2026 WL 252422, *6 (D. Mass. Jan. 30, 2026).  And second, where the petitioner has already been arrested and moves for habeas corpus relief, some courts have "adopted the reasoning in [*Nielsen*] to find that arrest at an adjustment of status interview violates the INA" and ordered the petitioner's

immediate release.  *Singh*, 2026 WL 1758396, at \*4 (citing *Franco*, 2025 WL 3280782); *see*

*Potapov v. Noem*, No. 1:26-CV-01641, 2026 WL 1510378, \*1 (E.D. Cal. May 28, 2026) ("In light

of the evidence that petitioner was detained at an adjustment of status interview, the court

incorporates and adopts the reasoning set forth in its prior order [in *Franco*], in which the court

concluded that the arrest of the petitioner at his adjustment of status interview likely violated the

INA and ordered immediate release as the appropriate remedy").

This matter falls within the purview of the latter scenario—Petitioner was arrested and

detained in connection with his adjustment of status interview and requests immediate release.

The Court finds the reasoning in *Nielsen*, *Singh*, and *Franco* persuasive.  As under this reasoning

Petitioner's arrest violated the INA, the Court concludes that immediate release is the appropriate

remedy.

**C.      Re-Detention and Pre-Deprivation Hearing**

Petitioner also requests that the Court enjoin Respondents from re-detaining him "without

a pre-deprivation hearing with adequate advance notice."  Dkt. No. 1 at 13.  Respondents are

correct, however, that "Petitioner identifies no authority holding that due process requires a pre-

detention hearing under 8 U.S.C. § 1226(a)."  Dkt. No. 6 at 7.

"[Section] 1226(a) and its implementing regulations require ICE officials to make an

individualized custody determination."  *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y.

2020).  "Specifically, § 1226(a)'s implementing regulations require an individualized

determination as to whether the detention of a noncitizen is appropriate after considering whether

the noncitizen (1) is a 'danger to property or persons' and (2) is 'likely to appear for any future

proceeding.'"  *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025) (quoting 8 C.F.R. §

1236.1(c)(8)), and then citing 8 C.F.R. § 236.1(c)(8)).

Precedent from the Second Circuit discusses § 1226(a)'s *post-detention* bond hearing requirement, *see, e.g. Velasco Lopez*, 978 F.3d at 855, but does not speak to when, if ever, a *pre-detention* hearing is required.  Noting the dearth of biding precedent, some district courts in this Circuit, adopting the Eastern District's reasoning in *Hyppolite*, have ordered that specific petitioners who were unlawfully detained be provided "an individualized, pre-detention bond hearing" before the petitioner can be re-detained.  *Rojas-Gonzalez v. Bondi*, No. 26-CV-895, 2026 WL 472618, *2 (E.D.N.Y. Feb. 19, 2026) (collecting cases).

As discussed, the Court finds Respondents violated Petitioner's rights when they arrested and detained him.  Moreover, Respondents have not demonstrated, or even suggested, that any individualized determination was made as to whether Petitioner posed any risk of flight or danger before he was detained.  Thus, the Court adopts the Eastern District's reasoning in *Hyppolite* and will order that that Respondents not re-detain Petitioner

> without providing him notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which the government will bear the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a), specifically that he poses a risk of non-appearance in court for his removal proceedings and/or that he poses a danger to the community.

*Hyppolite*, 808 F. Supp. 3d at 494.[5]

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

---

[5] To be clear, this Court does not hold that ICE must provide pre-detention notice and hearing to every non-citizen it seeks to detain under § 1226(a).  The scope of the Court's order is limited to Petitioner.

**ORDERS** that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and the Court further

**ORDERS** that Respondents immediately release Petitioner from Respondents' custody; and the Court further

**ORDERS** that Petitioner Daniel Farfan Parra shall not be re-detained without adequate notice to Petitioner and without an opportunity to be heard at a hearing where the Government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a) and the burden to demonstrate by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk; and the Court further

**ORDERS** that Respondents are **ENJOINED AND RESTRAINED** from using the adjustment of status process to re-detain Petitioner, including at or near any future interview related to Petitioner's application for adjustment of status; and the Court further

**ORDERS** that Petitioner's request for reasonable attorney's fees and costs under the EAJA is **GRANTED** and any request for such fees and costs shall be filed by July 17, 2026, with any response filed by July 31, 2026; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Petitioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 30, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge

10